ROY G. SIMMONS, RELATOR, v. POLICEMEN'S PENSION COMMISSION OF THE BOROUGH OF DEAL, RESPONDENT.

Argued May 6, 1930—Decided May 19, 1930.

Before Justices PARKER, CAMPBELL and BODINE.

For the relator, *Theodore J. Labrecque.*

For the respondent, *Lester C. Leonard* (*William A. Stevens,* attorney-general, on the brief).

PER CURIAM.

The relator claims to be entitled to retire on a pension as a member of the police force of the borough of Deal by reason of permanent disability due to an accident occurring in the performance of his duty. The statute applicable is the act of 1920 (*Pamph. L., p.* 324) known as the Police Pension act, section 2 of which provides as follows: "Any member of such police or fire department who shall have received permanent disability in the performance of his duty shall, upon certificate of the surgeon or physician of the police or fire department, or other physician designated for that purpose by the pension commission, be retired upon a pension equal to one-half of his salary at the time of his retirement;

where, however, a person being a member or employe of the police or fire department shall desire to retire by reason of injury or disease, said person shall make application in writing to the pension commission for such retirement, whereupon the pension commission shall call to their assistance the aid of the surgeon or physician representing either the police or fire department, and the person making the application may likewise call to his aid a regularly licensed and practicing physician or surgeon. The president of the board of pension commissioners is authorized to administer oaths to said physicians or other person called with respect to the matter before the commission shall determine, by resolution, whether said person is entitled to the benefits of this act. In case the two physicians called as hereinbefore provided fail to agree upon the physical condition of the applicant, then the pension commission may call a third disinterested, licensed and practicing physician and surgeon, and the determination of a majority of said three physicians, who being first duly sworn in the case, shall be reduced to writing and signed by them, and the pension commission shall consider the same in arriving at their decision."

The rule to show cause in this case is entirely too broad and properly criticised on that account by the defendant. In effect it orders that the defendant show cause why they should not be commanded to pay a pension to relator pursuant to the act. On this argument the relator merely asks that a writ be awarded directing the pension commission of the borough "to call to its assistance the aid of the police surgeon and act in determining whether the relator is entitled to a pension by virtue of the Policemen's Pension act. *Pamph. L.* 1920, *p.* 324." This is the proper form of such rule as this court should make if it holds with the prosecutor, for it will appear on a reading of the statute quoted above that the decision of the question whether the relator is entitled to a pension is committed to the pension commission, and all that the court should direct to be done is that the commission should proceed to consider the question in the manner provided by the statute, which so far it seems to have refused to do.

The making absolute of the present rule is resisted on three grounds. The first ground is that the relator was not a member of the force when he applied for a pension; the second ground, that the relator waived any rights he may have had by applying for reinstatement to active duty as the evidence showed he did. The third ground is that there is doubt about his rights in the matter and therefore the respondent invokes the ordinary rule that *mandamus* will not be awarded except in a case of clear legal right. Our general conclusion in the matter is that with respect to the third objection, the rule is of course correct, but the facts do not support it; as to the second, we do not think that there was such a waiver as to deprive the relator of any rights to a pension which he has or had; and as to the first, that it is not true in fact and law.

The argument of the first objection that relator was not a member of the force when he applied for a pension rests fundamentally upon the proposition that he had never been appointed as a regular member of the force but was merely a special policeman, and that he had ceased to be such at the time of his application. As this is the principal point in the case, a short statement of the facts is required.

The distinction between a regular and a special policeman, so far as any exists, is to be gathered from the language of the police ordinance of the borough which has not been printed in full but from which we take the following extracts.

Section 1 provides for the establishment of a police department "to consist of the following officers to be elected by the board of commissioners, to wit:

"A chief of police, a detective sergeant and as many regular and special policemen as are required to preserve the peace and good order of the borough at any time of the year within the discretion of the board of commissioners. The number of regular and special police officers may be increased or reduced as hereinbefore mentioned as the exigencies may arise from time to time."

The above is section 1 of the ordinance. The next section printed, section 5, provides for the keeping of a book

of record of the name and residence of the policemen and a specification of their duties. The next section to be printed is section 50, which provides "that the board of commissioners may from time to time appoint such special policemen *for private purposes, without compensation,* as it shall deem necessary for the public good, but such special policemen shall observe the rules and regulations of the police department of the borough, and the powers conferred upon them may, at any time, be revoked by the mayor with due notice to the board of commissioners."

Section 51 provides that "no special policemen shall be appointed for a longer period than one year, and the commission of all such officers shall state the time for which they are empowered to act."

The next printed is section 54, referring to salaries, which provides a scale of salary for regular police officers at so much per annum, and another salary for special police officers at so much per annum. The amount is immaterial as the salaries were raised after the passage of this ordinance in 1927.

At this point it may be well to state our understanding of the meaning of this ordinance with respect to the status of special policemen. We think it is plain that the special police mentioned in section 1 are part of the every-day force, and those mentioned in section 54 relating to salaries, are in an entirely different class from the special policemen mentioned in sections 50 and 51; which latter are obviously of the general type of railroad police and those whose compensation is paid by private employers, but for whom a police status is desirable. This is evident from the clause italicized in section 50 by us, and from the fact that private policemen are to serve without salary, whereas the relator was employed at a salary; from the fact that private special policemen are to be commissioned, whereas relator was not commissioned, and to serve for not longer than one year, wheras the tenure of the relator's employment is indefinite.

The relator was appointed on December 17th, 1925, by resolution of the board of commissioners as a "special police

officer of the borough of Deal to serve when and where directed at a yearly salary of two thousand dollars, payable semi-monthly, at the pleasure of the board of commissioners."

No question seems to have been raised about his having qualified in due form of law. When he applied for appointment on the force, he asked to be put on motorcycle work, but this was not immediately done. At first he was employed at desk work. Then in May, 1926, he was assigned to motorcycle duty and while in the performance of that duty, on May 23d, 1926, he was badly injured, his skull being fractured, his ear drum ruptured and other injuries sustained. He was sent to the hospital. In June the police surgeon discharged him from the hospital as cured, although it seems to be admitted that he was not cured by any means, because later this same police surgeon sent the relator to a specialist for treatment and admitted on the stand that he was wrong in having discharged him as cured. During the summer relator had been on half pay. On August 28th, based on a certificate of the police surgeon that he was fit to return to duty, he attempted to do so on September 1st and worked until the 14th of the month but found he could not do the work. At this time he was asked to resign from the force and refused to do so, whereupon he was placed on an indefinite leave of absence. At the request of the chief of police he turned in his uniform and equipment. It seems obvious, however, that up to this point at least the relator was recognized by the borough authorities as a member of the force. On May 26th, 1927, relator wrote to the mayor, asking to be returned to duty, but nothing came of it. This letter appears to have been placed before the board and the matter was laid over until November 30th, when relator appeared personally and was told that there was no opening for him. On Opril 25th, 1928, he asked to be put on the pension list.

We are clear that relator never ceased to be a properly accredited member of the police force even though a special policeman under section 1; and this makes it unnecessary to determine whether he would not still be entitled to apply for a pension because of the disabling injury while actually

on service, even though he had legally ceased to be a member of the force before applying for such pension.

While section 2 of the Pension act is not happily phrased, we think it clear that the section is properly to be divided into two parts. The first part intended to provide for cases in which a member of the department has received permanent disability in the performance of his duty, and the matter of his retirement is taken up by the pension commission of its own motion. In such case the commission directs the police surgeon to examine the man and, in case of a report that he is permanently disabled, the commission is then empowered to retire him upon a pension. The second part of the section preceded by the word "however," provides the machinery for retirement upon the application of the disabled member of the department. The procedure is that in such case such injured member desiring to retire makes application in writing to the commission, whereupon it is made the duty of that commission to call upon the police surgeon to make the examination and certify. Anticipating that such certificate may be adverse to the applicant, the statute further provides that the applicant himself may call in a regularly licensed physician and surgeon and if the two disagree, then the pension commission is to call in a third disinterested surgeon, and a majority vote of the three, after they have been duly sworn, shall be reduced to writing and signed and laid before the commission, which body then is to proceed to take the testimony of the physicians, or any other person, and to decide, after consideration of that testimony and of the written finding of the three physicians, whether the applicant is entitled to the benefits of the act.

The above seems to be a clear cut alternative scheme of procedure and it is plain that the relator made his application under the second portion of the section. As it seems to be conceded that he sustained a severe injury in the performance of his duty, and as we have just held that he had never ceased to have a status as a member of the police force up to the time of his application for retirement upon a pension in 1928, it seems entirely clear that the machinery provided

by the second portion of section 2 of the Pension Commission act should be set in motion with a view to ascertaining whether the injury was of so severe a character as to entitle him to retirement under that statute. Some point is made in the brief of the word "retire" as indicating that that procedure is inapplicable but what we have said disposes of that point also.

The last status established for him seems to have been that of an indefinite leave of absence, and that certainly is not retirement.

A peremptory writ will accordingly be awarded calling upon the pension commission to institute and pursue the procedure outlined in the second part of section 2 of the statute, and to reach in due course a determination as to whether the relator is entitled to retire on a pension pursuant to that section.