THE PEOPLE OF THE STATE OF NEW YORK ex rel. HENRY METCALF, Respondent, *v.* WILLIAM McADOO, as Police Commissioner of the City of New York, Appellant.

1. NEW YORK CITY — RETIREMENT OF POLICEMAN FOR DISABILITY. The phrase "unfit for duty," as used in section 355 of the charter of the city of New York (L. 1901, ch. 466), authorizing the compulsory retirement of police officers, means their inability to discharge with average efficiency the duties of the respective grades to which they belong. The fact, therefore, that a policeman is unable to perform full police duty, or every conceivable duty, does not of itself render him liable to retirement.

2. CERTIFICATE MUST BE SIGNED BY EXAMINING SURGEONS AS INDIVIDUALS, NOT AS A BOARD. The certificate of disability directed by the statute, "of so many of the police surgeons as the police commissioner may require," must be the personal act of each surgeon who aids in making it, not one that may conceal the persons acting through the signatures of the officers of a board.

3. INSUFFICIENCY OF CERTIFICATE. An order of the police commissioner of the city of New York dismissing a policeman from the force and placing him on the pension list, based upon a certificate of the board of surgeons that he was "unfit for the performance of full police duty," which was authenticated only by the signatures of the president and secretary, is without jurisdiction through lack of the proper statutory certificate of disability, and such policeman is entitled to reinstatement.

*People ex rel. Metcalf* v. *McAdoo,* 109 App. Div. 892, affirmed.

(Argued February 27, 1906; decided March 13, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 29, 1905, which affirmed an order of Special Term granting a peremptory writ of mandamus to compel the defendant to restore the relator to active duty as a sergeant of police in the city of New York.

The relator is a veteran, who, after four years of service as a soldier in the Civil war, on the 29th of October, 1866, was appointed a patrolman in the police force of the city of New York. In 1869 he was promoted to the position of rounds-man and in 1876 to that of sergeant. He continued to serve in that capacity until the 9th of May, 1905, when, without a hearing and against his protest, he was dismissed from the force by the police commissioner under the following circumstances: On the 21st of February, 1905, the commissioner ordered the "Board of Surgeons" to convene at a time and place named "for the purpose of examining such members of the police force as may be designated by the Commissioner in reference to their physical condition and ability to perform full police duty." The relator was ordered before the board and was examined by three surgeons in the presence of the other members. As the examination proceeded the result "was called out to the secretary" and "such of the surgeons who deemed it necessary personally verified the examination made by the committee." On the same day the board reported to the commissioner that "as a result of said examination it was moved, resolved that we find Sergeant Henry Metcalf unfit for the performance of full police duty by reason of obesity, fatty heart and poor circulation." At the same time the board by resolution made the following certificate: "The Board of Surgeons of the Police Department of the city of New York do hereby certify that Sergeant Henry Metcalf of the 82nd Precinct is permanently disabled so as to be unfit for police duty; that the cause of such disability is obesity, fatty heart and poor circulation; that the nature of such disability is permanent; that the extent of such disability is such as to unfit him for the performance of full police duty; that the said disability was incurred or sustained by the said Sergeant Henry Metcalf whilst in the actual performance of police duty and by reason of the performance of such duty and without fault or misconduct on his part." Neither the report nor the certificate was signed by the surgeons who made the examination, but simply by the president

and secretary of the board.    It did not appear how many or what members of the board voted for either resolution, and both of the officers who signed the certificate as well as the three surgeons who made the examination may have voted against both the resolution adopting the report and that by which the certificate was made.

In the month of May, 1895, the police commissioner, acting on this certificate, dismissed the relator from the force and placed him on the pension roll.    He applied for a peremptory writ of mandamus, and it appeared from the moving papers that for the last fifteen years prior to his removal he had not lost a day on account of sickness, and during his entire service of thirty-eight years no complaint was ever made against him. In 1896 he was commended by a special order of the superintendent for bravery in saving a woman and child from drowning, and in 1897 he was presented with a medal for saving the lives of several persons.    He had stood the test of two physical examinations by the surgeons of the municipal service commission, one of which was made about eighteen months before he was removed, and to the day of his retirement he did full police duty.    On Decoration Day, 1905, he marched with the survivors of his old regiment a distance of five miles without fatigue.

Upon proof of these facts, among others which were not disputed, the Special Term made an order commanding the immediate reinstatement of the relator, and upon appeal to the Appellate Division that order was unanimously affirmed. The police commissioner now appeals to this court.

*John J. Delany*, *Corporation Counsel* (*James D. Bell* of counsel), for appellant.    The certificate upon which the appellant acted was in the form required by the charter, as it contained the facts specified therein, and the objections to it are not well founded.    (L. 1901, ch. 466, §§ 355, 357; *People ex rel. Appel* v. *Casey*, 66 App. Div. 211.)    The certificate on which appellant acted in compulsorily retiring the relator is the certificate of so many of the police surgeons as he required

to make it, and is in substantial compliance with the provisions of the charter (L. 1901, ch. 466, §§ 294, 357). The certificate of relator's disability was, therefore, made by the police surgeons in substantial compliance with the charter provisions; the action of the police commissioner based thereon was within his jurisdiction, and relator's compulsory retirement was legal and effectual. (*People ex rel. Kennedy* v. *Brady*, 166 N. Y. 44; *Matter of Guden*, 171 N. Y. 529.)

*Alfred E. Sander* for respondent. Assuming that there is a provision in law for the compulsory retirement of a Civil war veteran, it has not been complied with in the case of this relator. (*People ex rel. Mitchell* v. *Martin*, 143 N. Y. 407; *Matter of Guess*, 16 Misc. Rep. 306; *Matter of Freel*, 38 N. Y. Supp. 143; 148 N. Y. 165; Merrill on Mandamus, § 274; Spelling Extr. Rel. § 1664; Fiero on Spec. Pro. 214, 215; *People ex rel. Kelley* v. *Common Council*, 77 N. Y. 511; *Matter of Sullivan*, 55 Hun, 288; *Matter of Pierce Co.*, 62 N. Y. 265; *People ex rel. McKenna* v. *Martin*, 1 App. Div. 420; *People ex rel. Jordan* v. *Martin*, 152 N. Y. 311.)

Vann, J. It is provided by the statute governing the subject that "any member of the police force being of the age of fifty-five years who has or shall have performed duty on such police force as aforesaid for a period of twenty years or upwards, upon his own application in writing, may, or upon a certificate of so many of the police surgeons as the police commissioner may require, showing a member of whatever age who has served twenty years is permanently disabled, physically or mentally so as to be unfit for duty, shall, by order of the police commissioner, be relieved and dismissed from said force and service and placed on the roll of the police pension fund * * *." (Charter, § 355.) Section 357, which relates to pensions, requires the certificate as to that subject to be made "by so many of the police surgeons as the police board may require" and to set forth "the cause, nature and extent

of the disability, disease or injury" of the member retired
upon pension. It also provides in substance that without
such a certificate "no member shall be retired upon pension
or be pensioned."

The commissioner had no power to remove the relator with-
out a certificate of the examining surgeons that he was per-
manently disabled so as to be unfit for duty. The statute
does not say unfit for "full" duty, but the certificate does,
and in this respect it follows the terms of the order requiring
the relator to be examined. By that order the surgeons were
directed to make the examination with reference to ability
"to perform full police duty," which is a material departure
from the language of the statute.

Fitness for police duty means the ability to discharge with
average efficiency the duty of the grade to which the member
belongs. A large police force must have some members of
unusual ability who are peculiarly fit to discharge the duties
of their positions. It must have some of a low degree of
efficiency who are barely able to fill the requirements of the
office. The statute refers to neither of these classes, but to
the great mass of the force, representing its average efficiency.
This idea is not expressed by the word used by the commis-
sioner and the surgeons, which qualifies and extends the stat-
ute. "Full" means complete or the highest degree, pointing
toward perfection. That is not the standard of the statute,
and the false standard erected by the commissioner and fol-
lowed by the surgeons may have resulted in injustice to the
relator. He may be able to perform police duty, as he has
for thirty-eight years with a faultless record of faithful service,
without being able to perform full police duty or every con-
ceivable duty, including service on the mounted squad, for
instance. The word interpolated is liable to mislead even those
who wish to do right, and it may be made a pretext to cover
abuses by those who wish to do wrong. As was well said
below: "One physically unfit to be a patrolman or a rounds-
man might be entirely fit to be an inspector, a captain or a
sergeant. * * * He might not be as efficient as a younger

man; he might not be fit to do some minor or particular thing, and in that sense he might not be fully fit, and yet he might be substantially fit for duty and the surgeons would in honesty have to so certify. But this word 'full' in their certificate may refer to some trivial thing for which they would not certify the subject substantially unfit for duty, but might be persuaded to certify him unfit for 'full' duty. A very little thing might be all that this word would be used for. If the surgeons may interpolate it, they are enabled to make a distinction which rests in their own minds only and is not revealed."

It is true that the forepart of the certificate uses the language of the statute, but that general clause, in accordance with the usual rule of construction, yields to the specific words which follow, so that the effect of the certificate as a whole is that the relator is unfit for " full police duty," which is precisely what the commissioner directed the surgeons to ascertain and all that they stated in their report accompanying the certificate. The relator could not be dismissed simply for disability unless he was at once placed upon the pension roll. (§ 355.) He could not be placed on the pension roll without a certificate as to the " cause, nature and extent of the disability." (§ 357.) In stating the extent of his disability, which was an essential part of the certificate, it was described as " such as to unfit him for the performance of full police duty." The standard adopted, therefore, was fitness to perform full police duty, which does not conform to the statute.

Moreover, the statute calls for the certificate " of so many of the police surgeons as the police commissioner may require." This may include all the surgeons on the force in the discretion of the commissioner, but whether a part or all are designated the statute contemplates that each one selected and present shall personally examine, and that at least a majority of those examining shall certify to the disability. This requirement is not satisfied by the action of a board, authenticated only by the signatures of the president and

18

secretary.  The old statute required a "certificate of the board of surgeons," but that was changed in the present charter, and it is the only material change made in the section in which it appeared.  No board is now created by law, but only by order of the commissioner, and the certificate does not state how many of the forty police surgeons were present, or how many voted for the resolution adopting it.  The statute does not say that the board of surgeons shall certify, but that the surgeons named for the duty shall certify, which means that they shall personally make the statement in writing on the responsibility of their own signatures.  A large board acting by resolution and the vote of a majority may make a certificate which the individuals composing the board or even a majority of them would not sign.  A weak or careless man may consent to a wrong if done in the name of another, when he would not consent to it over his own name. While we have no reason to believe that this was the fact in the case before us, it is our duty to consider what may be done by a board, as distinguished from individual action.  The requirement of a certificate is a safeguard to the members of the force, held by the statute as a shield between them and compulsory removal without a trial.  It is not only an appeal to the conscience of every surgeon who signs it to certify the truth, the whole truth and nothing but the truth, but it also identifies those who sign and charges each with responsibility for his action.  The certificate should be the personal act of each surgeon who aids in making it and not one that may conceal the persons acting through the signatures of the officers of a board.

Further discussion is not required, as both questions were fully considered by the courts below, and we announce as our conclusion that the commissioner acted without jurisdiction for the want of such a certificate as the statute requires.  The order should be affirmed, with costs.

CULLEN, Ch. J., O'BRIEN, HAIGHT, WERNER and HISCOCK, JJ., concur; WILLARD BARTLETT, J., not sitting.

Order affirmed.