[No. 26420. Department One. March 26, 1937.]

E. PAUL CLARK, *Appellant*, v. THE BOARD OF POLICE
PENSION FUND COMMISSIONERS OF THE CITY OF
YAKIMA *et al.*, *Respondents.*[1]

*Bonsted & Nichoson* and *N. J. Benoit*, for appellant.
*Don M. Tunstall*, for respondents.

MILLARD, J.—While serving as a policeman in the
city of Yakima on October 31, 1931, E. Paul Clark was
disabled as a result of accidental injury sustained while
riding a motorcycle. His injuries consisted of a frac-
ture of the lower end of the right femur, approximately
two inches above the condyles, and a fracture of the
third and fourth metatarsal bones.

[1]Reported in 66 P. (2d) 307.

Clark was confined in the hospital for three months, and thereafter at his home, in a cast, for a period of several weeks. He was unable to walk without assistance for a continuous period of about four months following the accident. As a result of the fracture, there was a half-inch shortening of the right lower extremity, which shortening was manifested by a slight curvature of the pelvis and a curvature of the lumbar spine to compensate for the shortening.

Clark was retired from the police department following appropriate action for that purpose by the board of police pension fund commissioners, and an order was entered by the board directing that Clark be paid thereafter from the police pension fund a yearly compensation equal to one-half the amount of salary attached to the rank which he held in the police department at the time of his retirement.

In April, 1936, Clark appeared before the board of police pension fund commissioners for examination and hearing, to determine whether his disability had ceased. At that time, Clark walked with a slight limp. The hearing disclosed that Clark is approximately ten per cent disabled; that, because of the shortening of his right leg, although he would be able to walk for an eight-hour period, fatigue in the right leg would begin to be noticeable after five or six hours, but that such fatigue would not harm him; in fact, exercise would be beneficial.

It was the opinion of the medical witness called by the board that Clark could not stay on a walking beat continuously, day in and day out, but, if he were assigned to some position that would not keep him continuously on his feet, there was no reason why Clark could not efficiently perform the duties of such position. Clark attends dances and indulges in the sports of hunting and fishing; and, although he testified he

suffered pain after his hunting and fishing trips, the pain is not sufficient to deter continuance of them. At the present time, he is an automobile salesman.

He testified that he could sit in an automobile about an hour before it was necessary to get out and walk around, due to the injury he had received, and that he experienced considerable pain periodically. He further testified that at times he is unable to be on his feet continuously, and that he still spends a considerable number of nights without sleep because of the pain and suffering caused by the injury.

Of a total police force in Yakima of twenty-eight men, only seven are employed in walking beats, and there are about a dozen positions in the department, excluding those for which Clark is unfitted by reason of education, experience or intelligence, which do not involve walking, and the duties of which Clark could perform.

At the time of his injury, Clark was a motorcycle patrolman. The motorcycles have been superseded by prowler cars or traffic cars. The testimony before the board was to the effect that this man could, without pain or inconvenience, operate a prowler car. His occupation at the present time, as an automobile salesman, consists almost entirely of the same activity.

At the examination before the board, it was determined that Clark is suffering a total permanent disability of ten per cent as the result of the injury he received October 31, 1931, and that Clark has recovered from his disability to such an extent that he is able to discharge, with average efficiency, the duties of the grade to which he belongs—motorcycle policeman—which now would be that of operator of a prowler or traffic automobile. This occupation would differ very little from a great portion of the work he is now performing as an automobile salesman, which position

requires him to operate an automobile. The board were of the view that Clark was physically capable of performing the ordinary duties of a policeman, and that his disability has ceased. An order was entered requiring him to report to the chief of police for active duty in the police department.

On petition of Clark, the superior court for Yakima county reviewed the proceedings of the board of police pension commissioners revoking the pension and ordering Clark to be restored to active service at the same salary he received at the time of his retirement. That review resulted in affirmance of the order of the board. Clark appealed.

It is clear, contrary to the contention of appellant, that the evidence recited above is sufficient to sustain the finding that appellant's disability had ceased. The evidence established the fact that appellant is able physically to return to work in the police department. There are at least eleven or twelve jobs in the department the duties of which he is capable of performing; in fact, under the present conditions obtaining in the department, he is capable of performing the same duties that devolved upon him at the time he was injured.

Rem. Rev. Stat., § 9579 [P. C. § 1200], provides for the creation of a police pension board and its duties in cities of the class of Yakima.

Rem. Rev. Stat., § 9583 [P. C. § 1204], under which counsel for respondents contends the disability of a policeman has ceased, if he is reasonably able to perform the ordinary duties of a police officer, reads as follows:

"Whenever any person, while serving as a policeman in any such city shall become physically disabled by reason of any bodily injury received in the immediate or direct performance or discharge of his duties as such policeman, or become incapacitated for service, said

incapacity not having been caused or brought on by dissipation or abuse, of which the board shall be judge, said board may, . . . retire such person from said department, and order and direct that he shall be paid from said fund during his lifetime, a yearly pension equal to one-half of the amount of salary attached to the rank which he may have held in said police department at the date of such retirement, . . . Provided that whenever such disability shall cease, such pension shall cease, and such person shall be restored to active service at the same salary he received at the time of his retirement.''

Section 9587 [P. C. § 1208] provides that a policeman, retired for disability, may be summoned before the board at any time subsequent to his retirement for examination as to his fitness for duty, ''and shall abide the decision and order of said board with reference thereto; . . .''

The above quoted portion of the statute respecting the discontinuance of the pension whenever ''such disability shall cease,'' means no more and no less than that, whenever the disability sustained by reason of bodily injury or incapacity for service from other causes (not brought on by dissipation or abuse) shall cease, the pension shall also cease. The words ''incapacity'' and ''disability'' are synonymous. The disability or incapacity has ceased if the policeman is reasonably able to perform the ordinary duties of a police officer.

We do not understand the appellant to seriously contend that any disability is sufficient to entitle an injured policeman to a pension. *Simmons v. Policemen's Pension Commission,* 111 N. J. L. 134, 166 Atl. 925, does not sustain such position. The first decision in that case was rendered in 1930, and is reported in 8 N. J. Misc. 408, 150 Atl. 245, upon a question as to the procedure to be followed under the policemen's pension

fund act of that state. The provisions of the New Jersey statute were that any member of the police or fire department who received a "permanent disability in the performance of his duty," shall be retired upon a pension equal to one-half of his salary. The act further provided that, where such a person desired "to retire by reason of injury or disease," such person should follow a certain procedure.

In the case reported in 111 N. J. L. 134, 166 Atl. 925, the court said:

"It was pointed out in our former opinion that the case comes under the second clause of section 2 (Pamph. L. 1920, p. 325), 'where, however, a member of the police or fire department shall desire to retire by reason of injury or disease.' We take it that the word 'injury' means injury causing 'permanent disability in the performance of duty' in the phraseology of the first clause. That there was an injury, incurred in the performance of duty, and that it was very severe, were facts all settled in the former case. See 8 *N. J. Misc.* 412. The testimony in that case is returned as part of the present case. Only two questions remained for settlement. Did a permanent disability remain? And if so, was it of the character contemplated in the statute? The act itself gives no definition of 'permanent disability' but the natural meaning in the case of a policeman is that it is such as to incapacitate him from reasonably performing the ordinary duties of a policeman, and similarly in the case of a fireman. Both employments call for full mental, physical and nervous vigor. It is common knowledge that in the larger cities, candidates undergo rigid tests, both mental and physical, and must in the performance of duty be endowed with more than usual strength, skill and endurance, to cope with the exacting duties of their employment. If a policeman is unable to perform the ordinary everyday duties of a policeman, and is permanently unfitted therefor, he is under permanent disability, and it is no answer to say that the statute does not entitle him to retire, because he is able to sit at a desk and make entries in a book. The statute

might well provide for such substitute occupation, as in *Lerch v. Morgan,* 191 *Iowa* 963; 183 *N. W. Rep.* 578, cited in 43 *C. J.* 816, but it has not done so. We think the theory of our statute is that a fireman is a fireman, a policeman a policeman, and neither a desk clerk; and that a policeman permanently disabled to do his ordinary duty as such and otherwise within the statute is entitled to invoke it.''

In that case, it was found that the applicant had sustained a loss of seventy-five per cent of the hearing of his right ear, and also a smaller loss in the other ear. It was further found that he had sustained a permanent injury to the nerves and the retina of one eye which permanently impaired his eyesight. The medical experts were also in accord that the policeman had sustained permanent and severe injuries to his brain and nervous system. In that case, any holding other than that the pension applicant sustained injuries which incapacitated him from the performance of the duties of a police officer, would have been erroneous.

In *People ex rel. Metcalf v. McAdoo,* 184 N. Y. 268, 77 N. E. 17, the court held the statute authorizing a compulsory retirement of police officers of the city of New York ''unfit for duty,'' did not require the retirement of a policeman unable to perform full police duty or every conceivable duty, but only such as were unable to discharge with average efficiency the duties of their respective grades. The statute of New York required, in order to enforce compulsory retirement, a showing that the policeman was ''permanently disabled, physically or mentally so as to be unfit for duty.'' The court said:

''The commissioner had no power to remove the relator without a certificate of the examining surgeons that he was permanently disabled so as to be unfit for duty. The statute does not say unfit for 'full' duty, but the certificate does, and in this respect it follows the terms of the order requiring the relator

to be examined. By that order the surgeons were directed to make the examination with reference to ability 'to perform full police duty,' which is a material departure from the language of the statute.

"Fitness for police duty means the ability to discharge with average efficiency the duty of the grade to which the member belongs. A large police force must have some members of unusual ability who are peculiarly fit to discharge the duties of their positions. It must have some of a low degree of efficiency who are barely able to fill the requirements of the office. The statute refers to neither of these classes, but to the great mass of the force, representing its average efficiency. This idea is not expressed by the word used by the commissioner and the surgeons, which qualifies and extends the statute. 'Full' means complete or the highest degree, pointing toward perfection. That is not the standard of the statute, and the false standard erected by the commissioner and followed by the surgeons may have resulted in injustice to the relator. He may be able to perform police duty, as he has for thirty-eight years, with a faultless record of faithful service, without being able to perform full police duty or every conceivable duty, including service on the mounted squad, for instance. The word interpolated is liable to mislead even those who wish to do right, and it may be made a pretext to cover abuses by those who wish to do wrong. As was well said below: 'One physically unfit to be a patrolman or a roundsman might be entirely fit to be an inspector, a captain or a sergeant. . . . He might not be as efficient as a younger man; he might not be fit to do some minor or particular thing, and in that sense he might not be fully fit, and yet he might be substantially fit for duty and the surgeons would in honesty have to so certify . . .' "

The appellant is reasonably able to perform the ordinary duties of a police officer. The provision of the statute is to the effect that, when the disability ceases, there shall be a restoration of the policeman to the service, at the same salary he received at the

time of his retirement. When restored at the same salary, there should be a restoration to the same position or rank held by the appellant at the time of his retirement, which would be the operation of a prowler or traffic car.

As was said in *People ex rel. Metcalf v. McAdoo, supra,* fitness for police duty means the ability to discharge, with average efficiency, the duty of the grade to which the member belongs. We are clear that the appellant has the ability to discharge, with average efficiency, the duty of the grade to which he belongs.

Judgment affirmed.

STEINERT, C. J., MAIN, BLAKE, and GERAGHTY, JJ., concur.