[No. 4594-3-III. Division Three. August 3, 1982.]

RICHARD E. BOYLES, *Respondent,* v. WASHINGTON LAW ENFORCEMENT OFFICERS' AND FIRE FIGHTERS' RETIREMENT BOARD, *Appellant.*

Kenneth O. Eikenberry, Attorney General, and Clifford D. Foster, Jr., Assistant, for appellant.

J. E. Fischnaller and Reaugh & Prescott, for respondent.

GREEN, J.—The Washington Law Enforcement Officers' and Fire Fighters' Retirement Board (Board) appeals from the Superior Court's reversal of a determination that Richard E. Boyles, a former sheriff, was not entitled to retire-

ment benefits under the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act, RCW 41.26 (Retirement Act).[1] The primary issue is whether the Board applied the proper standard for determining whether Mr. Boyles was entitled to retirement benefits.

The Board found the following facts: Mr. Boyles was employed by Franklin County as a deputy sheriff in February 1965. In 1970, he was appointed sheriff, and thereafter he was elected and served two full terms; however, he was defeated in a bid for reelection in September 1978. On November 29 of that year, he applied for disability retirement.

The Board found Mr. Boyles is afflicted with reactive airways disease which makes

> it quite difficult for him to do anything that requires exertion; *i.e.*, running or climbing stairs to any great extent, as an exertion of that type will immediately bring on an episode of bronchospasm which will make it difficult for him to continue with the task at hand.

He first became aware of his physical impairment in 1973 when, while digging postholes, he "had an attack making it difficult to breathe along with excessive perspiration and weakness requiring him to crawl back to the house to get to a telephone." He was hospitalized and treated for bronchitis and "reflux esophagitis" (scarring of the bronchial tubes caused by inhaling concentrated stomach acids).

Although his impairment gave him few problems over the succeeding 5 years unless he ingested certain foods, he was examined again in 1978 at which time "he complained of shortness of breath with activity, productive cough, and difficulty performing any kind of physical activity without becoming breathless and having to stop." His condition was then diagnosed as obstructive lung disease or allergic rhinitis. In the physician's opinion, Mr. Boyles was medically disabled from engaging in any kind of activity that required

---

[1]The determination was made by the state board following a de novo hearing under RCW 41.26.220. That board affirmed its prior decision and the local board's determination that Mr. Boyles was not entitled to retirement benefits.

physical exertion. A specialist in chest and infectious diseases, to whom Mr. Boyles was referred, found a "definite degree of obstructive bronchitis". He stated it was "unlikely [Mr. Boyles] . . . could maintain a level of strenuous exertion for more than very short periods".

The findings further show that in addition to Mr. Boyles' respiratory condition, an audiologist reported he has a hearing loss. He has difficulty comprehending speech under competitive–noise listening circumstances (*e.g.*, in a communications room or a room where office machinery is operating). Recognizing Mr. Boyles' work as a police officer would bring him in contact with radio communications, the audiologist pointed out "radio sound fidelity frequently is lacking and, as such, may present an even more problematic communications situation for Mr. Boyles than for a normal–hearing individual.

The findings continue that Mr. Boyles "served actively as sheriff . . . and performed 'in all of the areas that a road deputy' sheriff is required to perform, but with less frequency following his hospitalization" in 1973. One instance was recited in which, after his hospitalization, Mr. Boyles rendered aid to persons injured in a freight train accident. After carrying an injured person on a stretcher about 50 feet up a steep hill, he collapsed with a bronchial asthma attack. On another occasion, he responded to what turned out to be a false alarm from one of the superior court rooms which required him to run up stairs from the sheriff's office. His undersheriff, Rick Corson, who also responded, found Mr. Boyles at the top of the stairs "obviously in a state of distress from shortness of breath."

During the last 1½ years, Mr. Boyles delegated most of his physically vigorous duties to Mr. Corson. In the early part of 1978, Mr. Boyles indicated to Mr. Corson he might not be able to continue his duties and would have to resign as sheriff because of his bronchial problems.[2]

---

[2]Although not included in the Board's findings, we note Mr. Boyles testified he was grooming Mr. Corson to assume his position because he would not be able

The findings further state at the time of Mr. Boyles' application for disability retirement, the sheriff's department consisted of a staff of about 30 persons including the sheriff, undersheriff, 15 road deputy sheriffs, clerical personnel, jailers and dispatchers. About 15 other persons served as volunteer reserve deputies. It was Mr. Corson's opinion that the duties of a physically disabled sheriff could be performed by "a willing under-sheriff and a team of Deputy Sheriffs." Mr. Corson testified he and Mr. Boyles were fulfilling the duties of the office of sheriff.

Based on these findings, the Board denied Mr. Boyles' application, concluding: (1) The statutory duties of sheriff may be performed by either the sheriff *or* his deputies. Therefore, Mr. Boyles could perform the duties of sheriff in an administrative capacity with average effectiveness, leaving the principal law enforcement and any physically rigorous duties to be performed by the undersheriff and deputy sheriffs; consequently, (2) Mr. Boyles failed to sustain his burden of proving by a preponderance of the credible evidence that he is physically disabled in such degree as renders him unable to perform the duties of sheriff of Franklin County with average efficiency.

On appeal, the Superior Court considered the case as presenting mixed questions of law and fact under *Daily Herald Co. v. Department of Empl. Sec.,* 91 Wn.2d 559, 558 P.2d 1157 (1979), and reviewed the entire administrative record de novo.[3] The court concluded that under the error of law, clearly erroneous *or* arbitrary and capricious standards of review, the Board's decision should be reversed. RCW 34.04.130(6).

After the Board appealed to this court, *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 646 P.2d 113 (1982) was decided. In that case the court held the admin-

---

to complete his next term if reelected.

[3]RCW 41.26.220 states: "Judicial review of any final decision by the retirement board shall be governed by the provisions of chapter 34.04 RCW [administrative procedure act] . . ."

istrative procedure act does not authorize a reviewing court to substitute its judgment for that of the administrative agency in factual matters unless, after a review of the entire administrative record, it can be said the agency's findings of fact are clearly erroneous. Applying that standard here, we cannot say the Board's findings are clearly erroneous.

■ Whether the Board applied the proper law to its findings of fact

> is a question of law, to which we apply the error of law standard. Since issues of law are the responsibility of the judicial branch to resolve, the error of law standard allows the reviewing court to essentially substitute its judgment for that of the administrative body, though substantial weight is accorded the agency's view of the law. As we said in *Overton v. Economic Assistance Auth.*, 96 Wn.2d 552, 637 P.2d 652 (1981), at pages 554–55:
>
>> Where an administrative agency is charged with administering a special field of law and endowed with quasi–judicial functions because of its expertise in that field, the agency's construction of statutory words and phrases and legislative intent should be accorded substantial weight when undergoing judicial review. . . . We also recognize the countervailing principle that it is ultimately for the court to determine the purpose and meaning of statutes, even when the court's interpretation is contrary to that of the agency charged with carrying out the law. . . . [B]oth history and uncontradicted authority make clear that it is emphatically the province and duty of the judicial branch to say what the law is.
>
> (Citations omitted.)

*Franklin Cy. Sheriff's Office v. Sellers, supra* at 325. We conclude the Board committed an error of law in this case in determining Mr. Boyles is not entitled to disability benefits under the Retirement Act and based upon its findings, the decision should be reversed.

The Retirement Act provides:

> Any member, regardless of his age or years of service may be retired by the disability board, subject to approval by the director as hereinafter provided, for *any disability which* has been continuous since his discontin-

uance of service and which *renders him unable to continue his service,* whether incurred in the line of duty or not.

(Italics ours.) RCW 41.26.120. In construing this provision, both parties agree *Clark v. Board of Police Pension Fund Comm'rs,* 189 Wash. 555, 66 P.2d 307 (1937) is controlling. However, they disagree as to the interpretation that court gave the act.

The Board takes the position Mr. Boyles is not unable to continue his service because he is capable of performing a *reasonable range* of the duties of sheriff.[4] On the other hand, Mr. Boyles contends he is entitled to retirement benefits because he is not reasonably capable of performing, with average efficiency, *all* the *ordinary duties* of a sheriff. He asserts the ordinary duties of sheriff include physically rigorous duties.[5]

In *Clark* a motorcycle policeman, who received disability retirement after fracturing his leg, was ordered to return to active duty. The board found the policeman could perform the duties of his former position, even though the fracture resulted in one of his legs being shorter than the other, because motorcycles had been replaced by prowler cars. The court affirmed, observing there were several jobs in the department at the officer's grade level which he could perform. The court cited *People ex rel. Metcalf v. McAdoo,* 184 N.Y. 268, 272–73, 77 N.E. 17 (1906), where it was held the New York police retirement statute did not require retirement of police officers who were unable to perform "full" police duty or every conceivable duty:

---

[4]*See Newman v. Oakland Retirement Bd.,* 80 Cal. App. 3d 450, 145 Cal. Rptr. 628 (1978), where the California court interpreted *Clark.*

[5]*See Board of Trustees v. Faris,* 470 P.2d 981 (Okla. 1970) (a police officer is disabled when unfit for strenuous physical activities because those activities cannot be divorced as a matter of law from his or her "usual duties"). *See also Knight v. Board of Trustees,* 269 S.C. 671, 239 S.E.2d 720 (1977); *Spencer v. Yerace,* 155 W. Va. 54, 180 S.E.2d 868 (1971); *Hooper v. Lincoln,* 183 Neb. 591, 163 N.W.2d 117 (1968); *Pueblo Firemen's Pension Bd. v. Hubersberger,* 132 Colo. 344, 288 P.2d 352 (1955).

"Full" means complete or the highest degree, pointing toward perfection. That is not the standard of the statute, . . . [The applicant] may be able to perform police duty, as he has for thirty–eight years with a faultless record of faithful service, without being able to perform full police duty or every conceivable duty, including service on the mounted squad, for instance. . . . "One physically unfit to be a patrolman or a roundsman might be entirely fit to be an inspector, a captain or a sergeant. * * * He might not be as efficient as a younger man; he might not be fit to do some minor or particular thing, and in that sense he might not be fully fit, and yet he might be *substantially* fit for duty . . ."

(Italics ours.) However, in reaching its conclusion, the court in *Clark,* at page 560, also cited *Simmons v. Policemen's Pension Comm'n,* 111 N.J.L. 134, 135–36, 166 A. 925 (1933):

The act itself gives no definition of "permanent disability" but the natural meaning in the case of a policeman is that it is such as to incapacitate him from *reasonably performing the ordinary duties of a policeman,* and similarly in the case of a fireman. Both employments call for full mental, physical and nervous vigor. . . . If a policeman is unable to perform the ordinary everyday duties of a policeman, and is permanently unfitted therefor, he is under permanent disability, and it is no answer to say that the statute does not entitle him to retire, because he is able to sit at a desk and make entries in a book. . . . We think the theory of our statute is that a fireman is a fireman, a policeman a policeman, and neither a desk clerk; and that a policeman permanently disabled to do his *ordinary duty* as such and otherwise within the statute is entitled to invoke it.

(Italics ours.) Thus, under *Clark,* an applicant is not necessarily disabled if he cannot perform with perfection every conceivable duty of his position. However, he is disabled if, at the time of his application for retirement benefits, he is not *reasonably able* to perform his *ordinary duties.* The court in *Clark* added that the applicant's duties are to be determined by the grade in the department to which he belongs.[6]

---

[6]Mr. Boyles additionally argues his entitlement to disability should be based

The duties of the grade in the department to which Mr. Boyles belongs—the office of sheriff—are listed in RCW 36.28.010:

> The sheriff is the chief executive officer and conservator of the peace of the county. In the execution of his office, *he and* his deputies:
> (1) *Shall* arrest and commit to prison all persons who break the peace, or attempt to break it, and all persons guilty of public offenses;
> (2) *Shall* defend the county against those who, by riot or otherwise, endanger the public peace or safety;
> (3) *Shall* execute the process and orders of the courts of justice . . .
> (4) *Shall* execute all warrants . . .
> (5) *Shall* attend the sessions of the courts . . .
> (6) *Shall* keep and preserve the peace in their respective counties, and quiet and suppress all affrays, riots, unlawful assemblies and insurrections, . . .

(Italics ours.) Even though most of these duties require physical exertion, the Board argues the duties listed may be performed by the sheriff *or* his deputies and Mr. Boyles could, therefore, substantially perform his position by delegating their performance to his undersheriff or deputies.

■■ It is true the sheriff's deputies "possess all [his] power, and may perform any of [his] duties . . ." RCW 36.28.020. However, use of the word "shall" by the Legislature in RCW 36.28.010 indicates the sheriff's responsibility for personally carrying out the enumerated duties is mandatory rather than discretionary. *See Pierce Cy. Office of Involuntary Commitment v. Western State Hosp.*, 97 Wn.2d 264, 270, 644 P.2d 131 (1982); *Clark Cy. Sheriff v. Department of Social & Health Servs.*, 95 Wn.2d 445, 448,

---

upon the duties of deputy sheriff, since he is entitled to return to that position under RCW 41.04.120. In our view, under both *Clark* and RCW 41.26.120, inability to continue one's service means incapacity to perform the duties required of the applicant's grade level at the time he claims disability retirement benefits. The Board's findings show Mr. Boyles applied for disability retirement benefits prior to expiration of his term of office. His grade level was, therefore, that of sheriff when he filed his claim, and we must look to the duties of sheriff to determine whether he is disabled from continuing his service in that capacity.

626 P.2d 6 (1981); *I–5 Truck Sales & Serv. Co. v. Underwood*, 32 Wn. App. 4, 645 P.2d 716 (1982). Because the duties are onerous and cannot be performed by the sheriff alone, the statute authorizes assistance; however, joint performance by the sheriff *and* his deputies is required. The primary responsibility for executing these duties rests with the sheriff as the county's chief executive officer. Thus, although a deputy may also perform the duties listed in RCW 36.28.010, the "ordinary duties" of a sheriff necessarily include those outlined in the statute. Since most of those duties require physical exertion and the Board found Mr. Boyles was incapable of doing anything which is physically rigorous,[7] it follows he is incapable of performing with average efficiency a substantial portion of the ordinary duties of his position. In fact, the Board found that until Mr. Boyles' disability, he had performed all the duties of a road deputy.

■ The Board's conclusion that Mr. Boyles was not entitled to disability retirement because his duties listed in RCW 36.28.010 "may be performed by either the sheriff *or* one of his deputies" was, therefore, erroneous. In effect, the Board's interpretation of that statute limits Mr. Boyles' position to that of an administrator, contrary to the rea-

---

[7]The Board's contention that the medical reports upon which its findings were based need not have been considered because they are hearsay and fail to show Mr. Boyles' disability prevented him from performing his duties has no merit. First, the parties stipulated to admitting the reports, no objection was made to their admission at the time of the hearing, and the Board specifically based several findings upon those reports. Second, the reports are not in conflict and this court is entitled to examine them independently of the Board. *See Smith v. Skagit Cy.*, 75 Wn.2d 715, 718, 443 P.2d 832 (1969). Third, whether they show Mr. Boyles was physically disabled from performing his duties depends upon what those duties are, which are further delineated in the testimony.

Likewise, the Board's argument it could take into account the fact Mr. Boyles ran for reelection is not determinative in light of its finding that he was disabled. While losing the primary election may be relevant to determining Mr. Boyles' motivation for applying for disability retirement benefits, it did not prevent him from doing so. The Board admits a member may apply for benefits under the act after he or she has been discharged from service. We agree with the trial court that "it is pure speculation for this court or any board to sub rosa decide that Mr. Boyles—had he been elected—would not have filed for disability pension."

soning in *Clark*. Moreover, it effectively precludes a sheriff from ever obtaining disability since, under the Board's theory, all of the sheriff's duties are delegable. Such a narrow application of the Retirement Act is contrary to the policy that it should be construed in favor of the persons for whose benefit it was intended—in this case Mr. Boyles. *Bowen v. Statewide City Employees Retirement Sys.*, 72 Wn.2d 397, 402, 433 P.2d 150 (1967); *Benedict v. Board of Police Pension Fund Comm'rs*, 35 Wn.2d 465, 473, 214 P.2d 171, 27 A.L.R.2d 992 (1950).

Therefore, accepting the Board's findings as verities, we conclude Mr. Boyles is disabled within the meaning of the Retirement Act. The trial court's reversal of the Board's decision is affirmed.[8]

MUNSON, J., concurs.

ROE, A.C.J. (dissenting)—I dissent, quoting *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), referring to *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959):

> Substitution of our judgment for that of the administrative agency in factual matters is not authorized by the APA, and by reasoning of *Hesperian Orchards*, we will not try facts de novo on review.

In the case at bench the administrative board found Mr. Boyles could perform the duties of sheriff in an administrative capacity with average effectiveness. The record reveals that he had these physical limitations for years while he was sheriff and no doubt he would have continued except for the fact that he lost the election. In *Clark v. Board of Police Pension Fund Comm'rs*, 189 Wash. 555, 562, 66 P.2d 307 (1937), an officer had physical limitations but since he apparently "is reasonably able to perform the

---

[8]Despite the position taken by the dissent, this decision addresses only the question of an applicant's entitlement to retirement disability benefits. It does not concern the qualifications required of a candidate for election—an area reserved to the people.

ordinary duties of a police officer", citing *People ex rel. Metcalf v. McAdoo,* 184 N.Y. 268, 77 N.E. 17 (1906), he was held fit for duty. Fitness for police duty means the ability to discharge with average efficiency the duties of the grade to which the member belongs. Since Boyles had been doing the work presumably with average efficiency, I do not see how this court can reverse that finding of fact, particularly in the light of the strictures of *Sellers.* The majority seeks to do so by converting this finding of fact to a conclusion of law, but it is simply a factual matter. It is the fact of the existence of the duties and the past performance of them which is a factual matter.

The majority opinion read literally would disqualify handicapped individuals from being sheriff unless they could personally do all of the physical acts recited in RCW 36.28.010. Not only do few sheriffs in this state perform all those duties, but I am sure there are many who are physically unable to do so.

I am unwilling to lay this pall on the handicapped and those with physical limitations who, under this opinion, would automatically be disqualified to run for the office of sheriff. Therefore, I dissent.

Reconsideration denied September 13, 1982.

Review granted by Supreme Court December 3, 1982.