[No. 5033-5-III.   Division Three.   April 26, 1983.]

GARY D. KEEVER, *Appellant,* v. THE LAW ENFORCEMENT OFFICERS' AND FIRE FIGHTERS' RETIREMENT BOARD, ET AL, *Respondents.*

Kenneth Pedersen and Critchlow & Williams, for appellant.

Kenneth O. Eikenberry, Attorney General, Kathy L. Nolan, Assistant, Curtis Ludwig, Prosecuting Attorney for Benton County, and Dennis Yule, Deputy, for respondents.

GREEN, J.—Gary D. Keever appeals from a superior court judgment affirming an order of the Washington State Law Enforcement Officers' and Fire Fighters' (LEOFF) Retirement Board, which denied his claim for disability retirement under the LEOFF act, RCW 41.26. The issues presented are (1) whether the Board's determination that a hereditary skin disorder did not entitle him to retirement benefits is arbitrary and capricious or clearly erroneous, and (2) whether the proceedings violated the appearance of fairness doctrine. We affirm.

Mr. Keever was employed by the Benton County Sheriff's Office in November 1976. He was examined by a physician, Dr. Rosenfield, and was certified for membership in the LEOFF retirement system. He worked primarily as a custodial officer and road deputy.

On September 1, 1978, Keever applied for disability leave and retirement benefits with the Benton County LEOFF disability board. He submitted letters from his attending physician, Dr. Jackson, a podiatrist, which stated he has epidermolysis bullosa—a skin condition which produces blisters on his feet as a result of friction or trauma. Dr. Jackson reported the condition was chronic, incapacitating Keever from performing his patrol duties. On September 28, Keever's employment was terminated.

The disability board postponed deciding Keever's

entitlement to benefits until January 1979 when it appointed Dr. Rosenfield to give a second opinion. Dr. Rosenfield reported Keever's blisters were no worse than they were when he was initially examined and certified for LEOFF membership. In his opinion, Keever was not disabled.

On the basis of these reports, the disability board granted leave benefits beginning September 28, 1978; however, it found the disability ceased by February 1979 and denied retirement benefits. Keever appealed to the Retirement Board which reversed and remanded for an additional examination by a specialist, noting Dr. Rosenfield "admits that he did not see the applicant at the time he was suffering from severe blisters. Thus, his opinion must be appropriately discounted."

Thereafter Keever was examined by Dr. Swan, a dermatologist. He diagnosed Keever's condition as a "simple" form of epidermolysis bullosa which "generally improves with passage of time . . ." In his opinion, the problem is greatly minimized in highly motivated persons and Keever could "get along very well with his disorder by minimizing trauma to his feet by keeping them dry, wearing properly fitted shoes and soft absorbent socks. Likewise, he can easily produce many blisters." The disability board again denied retirement benefits and on appeal the Retirement Board affirmed.

Keever then requested a de novo hearing before the Retirement Board. At the close of the testimony, the hearing officer found he failed to sustain his burden of proving his condition prevented him from performing his duties as a deputy sheriff with average efficiency. He further found Keever's membership in the LEOFF retirement system was void ab initio because epidermolysis bullosa is a disqualifying condition. Keever's contributions to the retirement system were ordered refunded. The Retirement Board adopted the hearing officer's findings. On appeal to superior court, the denial of his application for retirement benefits was affirmed. However, the cancellation of his membership in

the LEOFF retirement system was reversed on the basis that determination was in excess of the Board's statutory authority. No appeal was taken from the latter portion of the court's order.

Keever claims the denial of his application for retirement benefits was error because it is not supported by the record. He argues the opinions of Drs. Rosenfield and Swan should have been discounted because they examined him after his employment with the sheriff's office had ceased and his condition had abated. He further argues, at a minimum, the reasons for disregarding the opinion of Dr. Jackson, his examining physician, should have been stated, citing *Chalmers v. Department of Labor & Indus.*, 72 Wn.2d 595, 434 P.2d 720 (1967); *Groff v. Department of Labor & Indus.*, 65 Wn.2d 35, 395 P.2d 633 (1964).

■■ Our review of the Board's determination is governed by the administrative procedure act, RCW 34.04-.130(6). RCW 41.26.220. It is agreed the question here is factual; therefore, the standard for review is limited to determining whether the decision is arbitrary and capricious or clearly erroneous. Under these standards, after reviewing the entire record, this court must be firmly convinced either that the Board's determination was willful and unreasoning or, in light of the policy of the LEOFF act, a mistake was committed. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 324, 646 P.2d 113 (1982); *Barrie v. Kitsap Cy. Boundary Review Bd.*, 97 Wn.2d 232, 236, 643 P.2d 433 (1982); *Sisley v. San Juan Cy.*, 89 Wn.2d 78, 84, 569 P.2d 712 (1977). Where the facts are disputed, we may not substitute our judgment for that of the Board. *Franklin Cy.*, at 325.

Initially, *Chalmers* and *Groff* are not controlling here. Those cases held the trier of fact should give special consideration to the attending physician's opinion regarding the *cause* of injuries under the workers' compensation act. In this case, the cause of Mr. Keever's condition is not in issue—he admitted the condition is hereditary. The question here is whether his condition "renders him unable to

continue his service" or unable to discharge with average efficiency the duties of his rank or grade. RCW 41.26.120; *Clark v. Board of Police Pension Fund Comm'rs,* 189 Wash. 555, 563, 66 P.2d 307 (1937). Further, in *Chalmers,* at page 599 (quoting *Groff,* at page 45), the court recognized the treating physician's opinion is not conclusive:

> We are not saying that the trier of the facts should believe the testimony of the treating physician; the trier of the facts determines whom it will believe; . . .

In its findings, the Board recognized that in Dr. Jackson's opinion Keever's condition required transfer to a position not involving ambulatory activity. However, in addition to the letters submitted by Drs. Rosenfield and Swan, the Board also considered Dr. Swan's deposition in which he stated Keever could perform specific duties corresponding to the job descriptions of a road deputy and a custodial officer. It was within the Board's province to reconcile these conflicting positions. *Franklin Cy.*

Further, based on the record before us, we cannot firmly conclude the Board's determination was willful and unreasoning or that a mistake was made. Keever testified his condition was unchanged throughout his life; yet he had successfully worked as a police officer, a machinist, a sales clerk, a security guard, a fast food restaurant manager, and a laborer. He had also parked cars and was in the police reserves before being employed by the sheriff's department. He stated the severity of his condition depended on heat, what he did the previous day and how often he could be off his feet. He admitted he had no problems as a custodial officer (which is a job within his rank) and he never failed to perform what he deemed to be essential duties of a patrol officer.

Jerry Hood, Administrative Captain of the sheriff's department, testified a road deputy spent 60 percent of his time seated. The other 40 percent in part involved house checks, which were done mostly at night, and a few days a year supervising park activity. He further testified a custodial officer was on his feet 50 percent of the time, but long

periods of walking were infrequent. In his opinion, Keever did not fail to perform those duties because of his physical problems.

Keever points out he testified he was capable of performing his duties as a deputy at only 70 percent of average efficiency. The weight to be given this testimony, however, is a question of credibility. This court may not reweigh the testimony. *Rasmussen v. Department of Empl. Sec.,* 98 Wn.2d 846, 850, 658 P.2d 1240 (1983); *Franklin Cy. Sheriff's Office v. Sellers, supra.*

■ Second, Keever contends the appearance of fairness doctrine was violated because the disability board waited until after his condition improved to order a physical examination. He further argues the Retirement Board canceling his membership in the LEOFF retirement system ab initio necessarily colored the decision he was not entitled to benefits. These assertions, even if true, do not show a violation of the appearance of fairness doctrine. That doctrine (1) protects against decisions being made by administrative judges who are actually biased or have pecuniary interests in the proceedings, and (2) insures procedural due process. *Harris v. Hornbaker,* 98 Wn.2d 650, 664, 658 P.2d 1219 (1983) (Utter, J., concurring); *Hoquiam v. Public Empl. Relations Comm'n,* 97 Wn.2d 481, 488, 646 P.2d 129 (1982). No contention is made that either the disability or Retirement Board members were biased. Further, the proceedings complied with due process.

Affirmed.

MUNSON, A.C.J., and MCINTURFF, J., concur.