[No. 27751-1-I. Division One. June 15, 1992.]

BRUCE A. MORRISON, *Respondent*, v. THE DEPARTMENT OF RETIREMENT SYSTEMS, *Appellant*.

---

*Kenneth O. Eikenberry, Attorney General,* and *Alice Blado, Assistant,* for appellant.

*Mark S. McCarty* and *Reaugh Fischnaller & Oettinger,* for respondent.

GROSSE, C.J. — This appeal involves the question of whether police officer Bruce Morrison is entitled to disability retirement under the Washington Law Enforcement Officers' and Fire Fighters' (LEOFF) Retirement System Act; RCW 41.26. The Director of the Department of Retirement Systems (Department) appeals the Superior Court's reversal of the Department's denial of Morrison's application for disability retirement. We find, as did the King County Disability Board, the administrative law judge and the Superior Court, that Morrison is entitled to disability retirement. We affirm

the Superior Court and reverse the Department's denial of Morrison's application for disability retirement.

Bruce Morrison became a King County police officer in May 1966. Morrison is a member of the LEOFF I retirement system. In February 1986, Morrison was assigned to the Internal Investigation Unit (IIU) of the King County Police Department. Eighty percent of his duties as a detective with the IIU involved desk work, such as using the phone and typing reports. Ten percent of his duties involved participation in the Fast Action Response Team, a group that responds to emergencies in the King County Courthouse. This involved running up and down stairs and confronting and subduing unruly individuals. The remaining 10 percent of Morrison's duties involved field work. While in the field, Morrison was required to act as backup patrol when necessary. Backup patrol requires an officer be able to perform all the duties of a patrol officer, including running, jumping, confronting potential suspects and subduing violent suspects. As a detective with the IIU, Morrison was required to carry and be able to use a gun.

In February 1987, Morrison applied for disability retirement with the King County Disability Board (local board). Morrison suffers from cervical arthritis and degenerative disc disease, combined with chronic cervical pain, decreased cervical mobility and a dull ache and numbness in his arms, hands, and the back of his skull. These complaints began in January 1984 when Morrison attended a defensive tactics school and participated in a hairpulling class.

On February 18, 1987, the local board granted disability retirement effective March 5, 1987.

On March 9, 1987, the Assistant Director for the Department reversed the local board's grant of disability retirement, pursuant to RCW 41.26.120(3). On April 22, 1987, Morrison appealed the decision pursuant to former RCW 41.26.210.

On June 29 through 30 and July 10, 1987, administrative law judge James Skeel (ALJ) conducted a de novo review

pursuant to the Administrative Procedure Act (APA).[1] The judge heard testimony from several witnesses, including the following.

J.A. Zimmerman, legal adviser to the King County Police Department, testified that every officer, even one assigned to the IIU, is required to perform the ordinary duties of a police officer. Additionally, Morrison could not be placed in the department unless he returned to duty with medical certification that he is fully qualified to perform the duties of a police officer. Zimmerman testified that "[w]e are spread so short and so thin that we need officers to be able to function fully as police officers at any hour of the day or night."

The ALJ heard testimony from Dr. John Thayer, an orthopedic surgeon treating Morrison, and from Dr. Daniel Brzusek, who examined Morrison at the request of the local board.

Morrison testified that his neck condition prevented him from performing the physically demanding aspects of his job. The physicians agreed. Both physicians testified that Morrison's condition results in severely decreased range of motion in the neck, significantly below the range of motion expected in someone Morrison's age without neck problems.

Dr. Thayer examined several pages from a study entitled, "The City of Seattle Minimum Medical Standards for a Police Officer". The study concludes that an officer with limited range of motion comparable to Morrison's would not be able to perform critical job functions. Dr. Thayer agreed with the study's conclusion. He testified that Morrison's disability prevented him from performing his job duties with average efficiency.

Dr. Brzusek testified repeatedly that Morrison could not perform the physically demanding aspects of his job, including subduing violent individuals or using a weapon. Dr. Brzusek testified that "I would have no problem of him

---

[1]Morrison's case arose before the effective date of the new APA, RCW 34.05. RCW 34.05.902 provides that the new APA applies to agency decisions begun on or after July 1, 1989. Thus, Morrison's case is governed by the former APA, RCW 34.04.

being strictly an office worker with no weapon on him" but that "I don't think I would want him doing any type of real police work, or even wearing a weapon so he didn't have to use it or respond in an effective manner." Dr. Brzusek testified that if Morrison had to use a gun, "we're going to have a mess on our hands." Dr. Brzusek testified he would not release Morrison to a job involving physically strenuous duties. Dr. Brzusek concluded that Morrison was unable to perform his job duties with average efficiency.

On October 27, 1987, the ALJ issued findings of fact, conclusions of law and a proposed decision. The ALJ found that Morrison was able to discharge the desk work portion of his job. The ALJ found, however, that Morrison's duties required more than desk work, including the ability to use a gun, subdue violent individuals, and drive a car in emergency situations. The ALJ found that Dr. Brzusek was not willing to release Morrison to return to normal duties as a police detective and that both physicians "were concerned with Applicant's inability to react normally to situations involving physical confrontations with suspects and/or pursuit driving and/or shooting a gun in an emergency situation." The ALJ found that Morrison's neck condition rendered him unable to discharge the physically demanding aspects of his duties with average efficiency. The ALJ found that Morrison's inability to perform these aspects of his job created a hazard to Morrison, his fellow officers and the public. The ALJ proposed that Morrison be granted disability retirement.

On May 18, 1988, the Department rejected the ALJ's proposed order, finding Morrison had failed to prove he was unable to discharge with average efficiency the ordinary duties of an IIU detective.

Morrison petitioned the King County Superior Court to review the Department's decision, pursuant to former RCW 41.26.220 and former RCW 34.04. The superior court judge reversed the Department and ordered that Morrison be granted disability retirement. The Department appeals from this judgment.

## I

The LEOFF Retirement System Act provides for disability retirement for any disability incurred in the line of duty that "has been continuous since [the member's] discontinuance of service and which renders him unable to continue his service." Former RCW 41.26.120. The act does not provide standards by which to determine when a member becomes "unable to continue his service." Standards, however, have evolved from case law and agency regulations.

In *Clark v. Board of Police Pension Fund Comm'rs*, 189 Wash. 555, 66 P.2d 307 (1937), the court held that fitness for police duty means the ability to discharge, with average efficiency, the ordinary duties of the grade to which the member belongs. *Clark*, 189 Wash. at 562-63. Although issued over 50 years ago, *Clark* remains good law. *See, e.g., Boyles v. Department of Retirement Sys. (Boyles II)*, 105 Wn.2d 499, 505, 716 P.2d 869 (1986) (citing with approval *Clark*).

Agency regulations adopt the "average efficiency" aspect of *Clark*, but apply the test to the position held at the time of discontinuance of service, rather than the member's grade or rank. WAC 415-105-060(2) provides:

> In order to qualify to receive a disability retirement allowance, the applicant will be required to prove that he or she is physically or mentally disabled to such extent that he or she *is unable to discharge with average efficiency the duty of the position held at time of discontinuance of service*: *Provided,* That no member shall be entitled to a disability retirement allowance if the appropriate authority advises that there is an available position for which the member is qualified and to which one of such grade or rank is normally assigned and the board determines that the member is capable of discharging, with average efficiency, the duties of the position.

(Italics ours.)

The Department argues the Superior Court erred by defining Morrison's position as that of a patrolman (his grade or rank), rather than an IIU detective (his current assignment). Whether the Superior Court erroneously defined "position" need not be resolved, however, because the unrefuted medical

evidence shows Morrison was unable to perform with average efficiencies the duties of a detective assigned to the IIU. Thus, even if we apply the narrow definition of "position" advanced by the Department, Morrison is unable to continue his service.

## II

In reviewing an administrative decision, the appellate court stands in the same position as the superior court. *Newlun v. Department of Retirement Sys.*, 53 Wn. App. 809, 820, 770 P.2d 1071, *review denied*, 113 Wn.2d 1014 (1989). The Department's appeal presents a factual question. Thus, the standard of review is limited to determining whether the decision is arbitrary and capricious or clearly erroneous. *Keever v. Law Enforcement Officers' & Fire Fighters' Retirement Bd.*, 34 Wn. App. 873, 876, 664 P.2d 1256 (1983). Under this standard, after reviewing the entire record, this court must be firmly convinced the Department's decision was willful and unreasoning or, in light of the policy of the LEOFF act, a mistake was committed. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 324, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983); *Keever*, 34 Wn. App. at 876.

We are firmly convinced, based upon our review of the entire record, that the Department made a mistake. We find the decision denying Morrison's application is clearly erroneous. If Morrison's job duties as an IIU detective consisted exclusively of desk work, he would not be disabled, despite the frequent and sometimes intense pain he experienced in performing that part of his job. It is undisputed, however, that the duties of an IIU detective consisted not only of desk work, but also included 10 percent field work and 10 percent participation in the Fast Action Response Team.

The uncontradicted medical evidence indicates that Morrison was unable to perform the physically demanding aspects of his job. The evidence is most saliently summarized by Dr. Brzusek's testimony. When asked whether Morrison could

perform the ordinary functions of a patrol officer, Dr. Brzusek testified: "No, and I don't think you will find any doctor in his right mind in the city of Seattle that would release him to that at this point in time."

▮ The Department correctly maintains that the average efficiency standard does not contemplate that a member be able to perform every conceivable duty. *See Clark v. Board of Police Pension Fund Comm'rs*, 189 Wash. at 561. Nonetheless, an officer must be able to perform the duties of the position held. *Boyles* II, 105 Wn.2d at 504. The *Boyles* court held that disability under the LEOFF system is determined by evaluating "those duties actually performed by a deputy sheriff presently working in [the county at issue]." *Boyles* II, 105 Wn.2d at 504. The court refused to measure disability against the statutory duties of a deputy sheriff. The deputy sheriff's duties in Boyles' county were too physically demanding for Boyles. Thus, the court held Boyles was entitled to disability retirement.

The requirements that Morrison act as backup and participate in the response team were not theoretical components of an abstract job. Instead, the ability to respond as backup or to subdue an unruly individual falls within the scope of Morrison's ordinary job duties. That backup neither daily occurs nor routinely involves high speed chases or the use of a gun does not render these duties an extraordinary part of the job. Instead, Morrison's job requires that he be able to perform these duties when the need arises. An inability to perform these duties places Morrison, his fellow officers, and the public at risk.

The Department also correctly maintains that the average efficiency standard requires more than speculation that a member cannot perform the required job duties. The Department reasons that because Morrison was not called upon to engage in activity of a physically strenuous nature, his inability to perform physically demanding tasks was speculative. As demonstrated above, the problem with this logic is that Morrison's job required that he be able to perform physically strenuous tasks when the need arose.

■ Under the Department's interpretation, an applicant is not disabled if he can perform most of his job duties, despite undisputed medical evidence the applicant cannot perform all ordinary job duties. This interpretation is at odds with the policy of the LEOFF act:

> While the fiscal stability of the [LEOFF] system is important, . . . [another] important purpose of the [LEOFF] system is to encourage police officers and fire fighters who are not able to adequately perform their duties to leave their jobs.

*Malland v. Department of Retirement Sys.*, 103 Wn.2d 484, 490, 694 P.2d 16 (1985).

■ Additionally, any ambiguities in the standard by which to determine disability should be construed in Morrison's favor given the remedial nature of pension statutes, which Washington courts liberally construe in favor of the intended beneficiary. *Hanson v. Seattle*, 80 Wn.2d 242, 247, 493 P.2d 775 (1972); *Newlun v. Department of Retirement Sys.*, 53 Wn. App. at 826.

Finally, granting Morrison's application for disability retirement is consistent with the statutory scheme that provides for reexamination of individuals granted disability retirement in the event of a change in job requirements. RCW 41.26.130(5), .140(1). Thus, should a position arise that involves only desk work and does *not* involve physical activity, the Department could reexamine Morrison to determine if he would be capable of fulfilling the new position. *See Malland v. Department of Retirement Sys.*, *supra* (reexamination of disabled law enforcement officer permitted whenever a change in job requirements occurs). By corollary, until such a job exists, Morrison is unable to continue in service.

Morrison is entitled to disability retirement. We affirm the Superior Court and reverse the Department's denial of Morrison's application for disability retirement.

COLEMAN and FORREST, JJ., concur.