E. L. KIRK, APPELLANT, V. STATE BOARD OF IRRIGATION, APPELLEE.

FILED JANUARY 3, 1912.    No. 17,008.

1. **Waters: CONTROL OF BY STATE.** In this state, the water of running streams is *publici juris;* its beneficial use belongs to the public and is controlled by the state in its sovereign capacity.

2. ——: **APPROPRIATION BY RIPARIAN OWNERS.** Riparian owners cannot appropriate the water of running streams without the permission of the state.

3. ——: ——: **REGULATION BY STATE.** If the state grants the right to appropriate the waters of its running streams for beneficial use, it may do so under such limitations and conditions as it finds to be necessary and proper to subserve the public welfare.

4. ——: ——: **USE CONFINED TO STATE: INTERFERENCE WITH INTERSTATE COMMERCE.** In granting the right to appropriate water of a running stream for power purposes, it is within the discretion of the state, through its proper officers, to limit the rights granted

so as to prevent the transmission or use of the power beyond the confines of the state. Such limitation does not violate the federal constitution as interfering with interstate commerce.

5. ———: ———: CONTROL OF STATE BOARD OF IRRIGATION. The state board of irrigation, highways and drainage, in acting upon an application for the appropriation of the waters of the state, is given a reasonable discretion to so limit the grant that it will not be detrimental to the public welfare.

APPEAL from the district court for Knox county: 'ANSON A. WELCH, JUDGE. *Affirmed.*

*E. A. Houston* and *W. A. Meserve,* for appellant.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

SEDGWICK, J.

The appellant filed with the state board of irrigation an application for a permit to appropriate the waters of the Niobrara river for power purposes. The state board of irrigation indorsed its approval upon the application, and in that indorsement specified certain limitations and conditions of the approval. Among those specifications of limitations and conditions was the following: "(7) This grant is made subject to the provisions of section 42, article 2, of the Nebraska Irrigation Law, and power generated under and by virtue of this permit must not be transmitted or used beyond the confines of the state of Nebraska." The section of the statute referred to in this specification is as follows: "The water of every natural stream not heretofore appropriated, within the state of Nebraska, is hereby declared to be the property of the public, and is dedicated to the use of the people of the state, subject to appropriation as hereinbefore provided." Comp. St. 1911, ch. 93a, art. II, sec. 42. The applicant appealed to the district court for Knox county, complaining of this seventh paragraph of the limitations and conditions of his grant. Upon a hearing in that court the

action of the state board of irrigation in this particular was approved and the appeal therefrom was dismissed, and the applicant appealed to this court.

1. It is contended that this order ought to be reversed because: First, it is invalid as interfering with interstate commerce; second, the state board of irrigation has not been given power or authority by the state to impose such conditions and limitations.

In *Manufacturers Gas and Oil Co. v. Indiana Natural Gas and Oil Co.,* 155 Ind. 545, the supreme court of that state held that the statute, which attempted to "prohibit the owner of natural gas from transporting the same by safe methods out of the state, contravenes the federal constitution relating to interstate commerce, and is void, since natural gas, when reduced to possession, is an article of commerce." The defendant was taking natural gas from its own wells on its own land, and the action was brought to enjoin it from transporting this gas through pipes to any point without the state. The statute considered provided: "It shall be unlawful for any person or persons, company, corporation or voluntary association to pipe or conduct natural gas from any point within this state to any point or place without this state." This statute was held to violate the federal constitution by interfering with interstate commerce. The decision was put upon the ground that the gas, as well as the land from which it was taken, was the property of the defendant, and that the state, representing the public, had no property interest or rights therein. The court distinguishes the case from *Geer v. Connecticut,* 161 U. S. 519, and in doing so used this language: "In the case of wild animals, before they are reduced to possession, the ownership is in the public, and not in any private person, and they are, therefore, held to be subject to the protection of the sovereign. The privilege of taking, killing, and transporting them may, on this ground, be regulated by the legislature. As to natural gas, however, the public has no title to or control over the gas in the ground. On the

contrary, so far as it is susceptible of ownership it belongs to the owners of the superincumbent lands in common, or, at least, such landowners have a limited and qualified ownership. in it to the entire exclusion of the public." In *Geer v. Connecticut, supra,* the supreme court of the United States held that the statute of Connecticut prohibiting the transportation of game outside of the state, although the game was lawfully killed within the open season, was not affected by the interstate commerce clause of the federal constitution, and that the ownership of the wild game within the limits of a state, so far as it is capable of ownership, is in the state for the benefit of all its people in common. The court said that, the ownership of wild game being in the state so far as it was capable of ownership, the state might transfer the full ownership thereof to a citizen, or a qualified ownership, as the state saw fit, and that the effect of the Connecticut statute was to transfer limited or qualified ownership of game to one who took such game in the open season, and to reserve such ownership as would enable the state to prevent the removal thereof from the state. The opinion was by Mr. Justice White (the present Chief Justice), and was concurred in by a bare majority of the court, two of the justices of the court being absent, and Justices Field and Harlan dissenting. The ground of their dissent, as stated in the opinion of Mr. Justice Field, appears to be that "animals within a state, whether living in its waters or in the air above, are, at the time, beyond the reach or control of man, so that they cannot be subjected to his use or that of the state in any respect; they are not the property of the state or of any one in a proper sense. * * * A bird may fly at such height as to be beyond the reach of man or his skill, and no one can then assert any right of property in such bird; it cannot then be said to belong to any one." If the state never had and could not have any property in or power of disposition of wild animals, taken with the consent of the state in the open season, it would not transfer any

right of property to the defendant, and therefore would not and could not reserve any interest therein or control over the same. We understand that if it had been considered by the dissenting justices that the state had or acquired ownership of wild game so taken, or the right to control the same as property, they would also have held that it might have reserved such an interest therein as to enable it to prevent its transfer without the state. The opinion of the court, at least, was that, when a state has an interest in or control over property within its limits, it may transfer a qualified ownership, and prevent the transportation of the property without the state. We are concluded by opinions of that court upon federal questions, and we may be allowed to say that, if we were not so concluded, the reasoning of the opinion would control our judgment.

In this state, running water is *publici juris.* Its use belongs to the public and is controlled by the state in its sovereign capacity. *Meng v. Coffee,* 67 Neb. 500. A riparian proprietor cannot appropriate it without permission of the state. This state then has such a proprietary interest in the running water of its streams and in the beneficial use thereof that it may transfer a qualified ownership or right of use thereof. When it grants such ownership or right of use it may impose such limitations and conditions as its public policy demands. Under such circumstances the state may reserve such a right of ownership and control of the beneficial use of the running waters of the streams as will enable it to prohibit the transmission or use thereof beyond the confines of the state.

2. Has the state granted to the state board of irrigation power to impose such conditions upon the appropriation of the water of its streams to beneficial use? We think there is no doubt of the power and duty of the state board of irrigation to determine such questions. "If there is unappropriated water in the source of supply named in the application, and if such appropriation is

not otherwise detrimental to the public welfare, the state board, through its secretary, shall approve the same." Comp. St. 1911, ch. 93a, art. II, sec. 28. Thus the state board of irrigation is made the guardian of the public welfare in the appropriation of the public waters of the state, and this necessarily devolves upon that board a large discretion in such matters. If the public welfare demands it, they may grant a qualified and limited right of appropriation and in the beneficial use of the water so appropriated.

We think that the board has not exceeded its powers in the order complained of, and the judgment of the district court dismissing the appeal is

AFFIRMED. .