[No. 50405–9.   En Banc.   January 11, 1985.]

DAVID V. MALLAND, ET AL, *Appellants,* V. THE
DEPARTMENT OF RETIREMENT SYSTEMS,
ET AL, *Respondents.*

*Reaugh & Prescott,* by *J. E. Fischnaller* and *George E. Merker,* for appellant Malland.

*Hans E. Johnsen,* for appellant Kuaimoku.

*Kenneth O. Eikenberry, Attorney General,* and *Kathy L. Nolan* and *Donald F. Cofer, Assistants; Douglas N. Jewett, Seattle City Attorney, Gordon Campbell, Assistant, Linda M. Youngs, Bellevue City Attorney,* and *Richard L. Kirkby, Assistant,* for respondents.

BRACHTENBACH, J.—These consolidated cases involve interpretation of the statutory scheme governing reexaminations of individuals granted disability retirement allowances under the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act (LEOFF). Appellants, a former Seattle police officer and a former Bellevue fire fighter, challenge the cancellations of their disability retirement allowances, arguing that such cancellations are improper absent a showing that the circumstances under which the allowances were originally granted

have changed. We agree and hold that there must be some showing of a change of circumstances before a disability allowance may be canceled.

The facts of each case will be dealt with separately.

## Malland

Appellant David Malland commenced employment as a Seattle police officer in March 1966. He was granted disability retirement effective November 1979 due to hearing problems.

RCW 41.26.130(5) and RCW 41.26.140 permit periodic reexaminations of LEOFF members who have been granted disability retirement allowances. Pursuant to these provisions, Malland was reexamined in 1982. The Seattle Police Pension Board determined Malland was no longer disabled and, following a hearing, canceled his disability retirement allowance. Malland appealed to the Director of the Department of Retirement Systems. The Director affirmed the local board, stating that a change or improvement in condition need not be proven because RCW 41.26 requires determinations of an individual's condition at different times.

Subsequently, a de novo hearing was held before an administrative law judge. At the administrative hearing, two medical doctors and an audiologist testified that Malland's condition had not improved since the original grant of disability. The experts, however, reached contrary conclusions on the central issue of whether Malland was still disabled. One doctor concluded Malland remained disabled. A second doctor, Dr. Sennewald, testified that Malland's condition did not prevent him from performing most of the functions of a police officer with average efficiency.

The administrative law judge concluded no change in medical condition need be shown to cancel a disability allowance but that Malland was still disabled. The Director agreed no change in condition need be proven, but concluded that Malland was not disabled. The Director therefore ordered cancellation of Malland's allowance.

## Kuaimoku

Appellant Patrick Kuaimoku commenced employment as a Bellevue fire fighter in January 1969. Following a job-related back injury, Kuaimoku filed for disability retirement. The application was denied by the Bellevue Disability Board and the denial was affirmed by the State LEOFF Board.[1] Kuaimoku appealed. Subsequently, in a March de novo administrative hearing, the hearing examiner concluded Kuaimoku was disabled from working as a fire fighter and granted him a disability allowance. No appeal was taken from this order.

Subsequently, Kuaimoku was reexamined and, in 1979, the Bellevue Disability Board canceled his disability allowance. Kuiamoku appealed and a hearing de novo was conducted pursuant to RCW 41.26.220.

At the hearing, two doctors testified that there had been no substantial change in Kuaimoku's medical condition. A third doctor would not express an opinion on whether his condition had changed because he had not examined him at the time of the initial disability hearing. The two doctors who testified on behalf of the City of Bellevue concluded that Kuaimoku was not disabled. They based their opinion on the lack of objective signs of back injury. Kuaimoku's doctor, who had first examined Kuaimoku in 1975 in conjunction with the initial grant of disability, stated that Kuaimoku was disabled from working as a fire fighter. In his opinion Kuaimoku's subjective symptoms had improved somewhat because he had learned to take better care of his back.

The hearing examiner concluded Kuaimoku had failed to show he was still disabled. The trial court reversed and remanded, ruling that the burden of proof had been improperly placed on Kuaimoku.

---

[1]The 1982 Legislature abolished the Washington Law Enforcement Officers' and Fire Fighters' Retirement Board and transferred all of its powers, duties, and functions to the Director of the Washington State Department of Retirement Systems. RCW 41.26.051.

On remand before a different hearing examiner, the parties stipulated to use of the record from the prior hearing. The new examiner found, *inter alia,* that "[a]t the time of reexamination, Kuaimoku's back injury, though slightly improved, was essentially the same as at the time Kuaimoku was initially granted a retirement allowance." He found that Kuaimoku was still disabled and proposed an order reversing the cancellation of disability. The State LEOFF Board did not adopt this proposed order, however, and affirmed the cancellation. The State Board's finding of fact 9 provided: "At the time of reexamination Kuaimoku's back injury had improved somewhat from the time he initially was granted a disability allowance."

Kuaimoku again appealed. The trial judge affirmed, ruling that the State Board's order was neither "arbitrary and capricious" nor "clearly erroneous". The judge concluded that no change in medical condition or other circumstances need be shown to justify cancellation of a disability allowance. The judge further stated that even if such a change was required, the record supported the Board's finding of improvement in condition.

I

The issue presented in this case is whether a LEOFF Retirement System disability allowance may be canceled absent a showing that the circumstances upon which the original grant of disability was based have changed. The Department of Retirement argues that the issue of a claimant's continuing disability is to be determined de novo in a reexamination hearing, without reference to the initial determination of disability. We disagree.

Disability retirement may be granted only upon a finding by a Disability Board that the claimant's mental and physical condition disables the claimant from the further performance of his or her duties. RCW 41.26.120. This is not a finding of temporary disability. Separate provisions are made for temporary disability leaves. RCW 41.26.120. RCW 41.26.130(5) allows all members who were awarded disabil-

ity allowances before July 26, 1981, to be reexamined twice a year. However, this provision does not allow the Department to relitigate the issues resolved in the initial disability hearing. On reexamination, the Department is instructed to determine whether the member is "*still unable* to perform his duties". (Italics ours.) RCW 41.26.140(1). Inquiry is focused on the continuing nature of the disability, thus implying that some change in circumstances must be shown before a disability allowance may be canceled. The burden of proving such a change in circumstances rests with the Department.

This interpretation of the statutory scheme is consistent with the judicial principles of finality and fairness embodied in the doctrine of collateral estoppel. The doctrine of collateral estoppel, or issue preclusion, seeks to prevent relitigation of previously determined issues between the same parties, to promote judicial economy, and to prevent harassment of and inconvenience to litigants. *State v. Dupard*, 93 Wn.2d 268, 609 P.2d 961 (1980). Without the requirement that some change in circumstances be shown on reexamination, the Department would be allowed to relitigate the same issues resolved in the initial disability hearing after the time for appeal has elapsed.

The requirements for application of collateral estoppel are: (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied. *Rains v. State,* 100 Wn.2d 660, 674 P.2d 165 (1984).

The Department argues that the doctrine of collateral estoppel should not apply. It reasons that identical issues are not present in both proceedings because the initial disability determination and the reexamination determination involve consideration of the claimant's medical condition at different times. We reject this argument. While evidence presented at the reexamination proceeding may

describe the disability at a later point in time, if the disability is unchanged and there is no change in job requirements or the law governing disabilities, the difference in time periods is irrelevant. As recognized in the Restatement (Second) of Judgments § 27, comment *c* (1982), preclusion doctrines may apply despite temporal disparities:

> Sometimes, there is a lack of total identity between the matters involved in the two proceedings because the events in suit took place at different times. In some such instances, the overlap is so substantial that preclusion is plainly appropriate. . . . [I]n the absence of a showing of changed circumstances, a determination that, for example, a person was disabled . . . in one year will be conclusive with respect to the next as well.

The remaining requirements for application of collateral estoppel are satisfied. The initial determination of disability is a final judgment, the local disability boards and the Department are parties in both proceedings, and no injustice will result from application of collateral estoppel.

██ Collateral estoppel may bar relitigation of issues determined by an administrative agency if (1) the agency, acting within its competence, has made a factual decision and (2) application of the doctrine does not contravene public policy. *Dupard,* at 275. In determining whether an applicant is entitled to a disability allowance, disability boards act in a quasi–judicial capacity to resolve disputed issues of fact. Further, application of collateral estoppel does not contravene the purposes of RCW 41.26. The statute was passed to provide an actuarial reserve system for the payment of retirement and disability benefits to law enforcement officers and fire fighters. RCW 41.26.020. While the fiscal stability of the system is important, fairness and finality are also important since an important purpose of the system is to encourage police officers and fire fighters who are not able to adequately perform their duties to leave their jobs.

The application of the doctrine is limited by the terms of the statute. Collateral estoppel does not apply to the *award*

of a disability allowance since the statute allows the Department to return members to active duty. The doctrine does require that the Department show a change in circumstances to cancel a disability award, since the disabling effect of an established medical condition under previously existing circumstances may not be relitigated.

We do not require the Department to prove an objective improvement in the claimant's medical condition in all cases. Adaptations to physical disabilities, compensation for physical limitations and changes in equipment or job requirements are also changes in circumstances, evidence of which could be presented by the Department to support its position that a claimant is no longer disabled. A claimant's current job or other activities may be evidence of an improved medical condition or of adaptation to a medical condition, but the Department must also offer evidence that the ability to participate in such activities demonstrates an ability to perform all necessary job duties.

This decision precludes the Department from canceling a disability allowance on the basis of new expert testimony that the claimant's unchanged medical condition does not prevent the claimant from performing unchanged job duties or new medical testimony that the claimant's medical condition was incorrectly diagnosed at the time of the initial disability hearing.

## II

Having determined that the Department must prove a change in circumstances to cancel a disability allowance, we turn to the cases of Malland and Kuaimoku.

In Malland's case, the Department applied the wrong standard in making its determination. In his conclusions of law, the Director stated:

> RCW 41.26.140 requires a determination as to whether a retiree is "still unable to perform his duties". Thus, the employer and state as part of its burden need not show a change of conditions. Rather, the determination is whether the appellant is currently able to perform the duties of police officers with average efficiency.

Conclusion of law 3. By concluding that no change of conditions need be shown, the Director erred in interpreting the statute, and applied this erroneous interpretation to the facts of the case.

Even had the Director applied the correct standard, the Department did not present sufficient evidence to carry its burden of proof. It is undisputed that Malland's medical condition is unchanged. Our opinion today precludes consideration of Dr. Sennewald's testimony that Malland's medical condition would not prevent Malland from performing his duties as a police officer. His testimony is merely new expert testimony on an issue previously litigated at the initial hearing. The mere fact of Malland's current employment as a safety engineer for an insurance company and of his membership in the Coast Guard Reserve is not evidence of his ability to perform the duties of a police officer absent testimony that those activities demonstrate such an ability. Consequently, we reverse the cancellation of Malland's disability retirement allowance.

In Kuaimoku's case, the Retirement Board found that "[a]t the time of reexamination, Kuaimoku's back injury had improved somewhat from the time he was initially granted a disability retirement allowance." Judicial review of the administrative agency's finding of fact is governed by the clearly erroneous standard of RCW 34.04-.130(6)(e). See RCW 41.26.220. A finding of fact is clearly erroneous "'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 324, 646 P.2d 113 (1982) (quoting *Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969), *cert. denied,* 459 U.S. 1106 (1983)).

Although there is some evidence to support the Department's finding, having reviewed the record, we are convinced a mistake has been committed. The doctors who examined Kuaimoku testified that his back condition was unchanged. The record reveals that the doctors who testi-

fied that Kuaimoku's subjective symptoms had improved attributed this to the fact that Kuaimoku had been "pampering his back". This testimony does not support an inference that Kuaimoku could work as a fire fighter because his back condition had improved. Rather, it supports an inference that Kuaimoku's condition had improved only because he was *not* working as a fire fighter. Consequently, we reverse the cancellation of Kuaimoku's disability retirement allowance.

In light of our holding that the doctrine of collateral estoppel applies to reexamination proceedings, we need not address appellants' arguments concerning the applicability of res judicata, the doctrine of finality, the law of the case, or the definition of disability.

The cancellations of appellants' disability retirement allowances are reversed.

WILLIAMS, C.J., DOLLIVER and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DIMMICK, J. (dissenting)—I respectfully disagree with the majority's analysis and its conclusion that Malland's and Kuaimoku's disability cancellations should be reversed. The majority's requirement of changed circumstances sets an unreasonably high standard for cancellation and is contrary to the intent of RCW 41.26.

I support the definition of disability the Department has drawn from the statute: claimant is disabled when he is "unable to continue his service . . ." RCW 41.26.120. Further, I support the standard articulated by the Department to justify cancellation for nondisability: *current ability to perform the ordinary duties of claimant's grade or rank.* The majority correctly places the burden on the Department to prove that a claimant can perform his job before cancellation is justified. But the Department met its burden in both instances before us. The Department proved that Malland could hold full–time employment at another job in a similar environment. It also proved that Kuaimoku's back

condition had improved or was not as serious as originally believed.

There are four points where I diverge from the majority opinion: (1) the application of principles of collateral estoppel (effect of prior determination of disability), (2) the evidence necessary to warrant a finding of nondisability, (3) the weight to be afforded administrative decisions, and (4) the necessary level of performance required for a determination of nondisability (a point the majority did not need to reach).

### 1. Effect of Prior Determination of Disability

Reliance on principles of collateral estoppel is inappropriate under the terms of the statute which specifically permits reconsideration of disability at periodic intervals. RCW 41.26.130(5); RCW 41.26.140(1). Collateral estoppel is a judicial doctrine intended to prevent relitigation of "issues which have been actually and necessarily contested and determined . . ." *Peterson v. Department of Ecology*, 92 Wn.2d 306, 312, 596 P.2d 285 (1979). Estoppel by judgment is not appropriately invoked in judicial proceedings where there is an ambiguity in the prior judgment. *Peterson*, at 313; *Henderson v. Bardahl Int'l Corp.*, 72 Wn.2d 109, 117–18, 431 P.2d 961 (1967). Under the statute, an administrative decision that a worker is disabled is not the sort of issue that is "actually and necessarily contested and determined" to a degree to be considered conclusive.

A determination that a claimant is "unable to continue his service . . ." under RCW 41.26.120 is not a final judgment.[2] Such an administrative determination need not

---

[2] The only issue entitled to the finality of collateral estoppel is claimant's disability status prior to a properly conducted cancellation proceeding. I certainly would not advocate any retroactive reconsideration of his disability, nor reclamation of his prior benefit payments.

The majority's reference at pages 489–90 to claimant's loss of appeal applies only to the past determination of disability. A claimant can appeal any cancellation of disability. RCW 41.26.140(2). Furthermore, upon cancellation and return to service, he immediately comes under the protection of the retirement system.

even be adversarial. A determination may be based on a number of factors such as definitive medical evidence, speculative medical evidence, and subjective evidence from the claimant. When the evidence is vague or inconclusive, a disability retirement may be granted, awaiting future findings. Surely, such a determination of disability should not be considered a final litigation of the issue, subject to the doctrine of collateral estoppel.[3]

In fact, to apply the doctrine of collateral estoppel to disability decisions may work to the disadvantage of the claimant. The Department will be less likely to grant a disability pending future developments if a heavy burden of changed circumstances is required to cancel disability benefits. A better approach and one more consistent with statutory intent would be to adopt the principle that a determination of disability creates a presumption of a continuing disability, with the burden on the Department to come forward with evidence to rebut the presumption. This is one approach used by federal courts in addressing termination of social security disability benefits. *See, e.g., Kuzmin v. Schweiker,* 714 F.2d 1233 (3d Cir. 1983).

Application of the judicial doctrine of collateral estoppel to administrative decisions is also dependent upon policy

RCW 41.26.140(3). He would thus qualify again for disability retirement.

I am mystified by the majority's reference at page 490 to nonapplication of collateral estoppel to the disability award itself. The disability benefit is contingent upon a determination of disability. It ceases upon a determination of nondisability. The two are inevitably intertwined.

[3]The majority's quotation from the Restatement (Second) of Judgments § 27, comment *c* (1982) is incomplete. The comment refers to "litigation" and "judgments," not to an impermanent administrative decision. The general rule on issue preclusion stated in section 27 follows:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

A determination of disability can scarcely be considered a "valid and final judgment" when the statute authorizes reopening the issue twice yearly, following a new physical examination.

considerations. *State v. Dupard,* 93 Wn.2d 268, 609 P.2d 961 (1980). In the present case, invocation of the doctrine is not consistent with the policy and intent of the statute. The clear intent of the statute is to provide economic security when a worker is disabled, and to return him to work when he is able.

The statute strikes a careful balance between protecting the claimant's rights (by assuring a return at the same rank and at the same salary, and providing a full hearing before cancellation) and protecting the fiscal integrity of the retirement system. A disability retirement is not generally permanent,[4] being subject to periodic review of the disability. If, after reexamination, the Board determines that the beneficiary "is not so incapacitated . . . he shall be restored to duty . . ." RCW 41.26.140(2). The statute provides that a beneficiary over age 50 may refuse an examination without loss of benefits. RCW 41.26.140. But up until age 50, the intent of the statute is obvious: to restore disability beneficiaries to active employment if they become capable of performing their duties.

### 2. *Necessary Evidence*

Designation as "a presumption" or as "issue preclusion," may seem to be a pedantic argument, but it affects the evidentiary burden placed on the Department. The majority requires a showing of a change in circumstances to upset a prior disability determination. Most significantly, the majority would not accept new medical evidence that claimant is now able to perform his duties despite an unchanged condition. Nor would it accept new medical evidence to dispute or modify the initial diagnosis. Majority, at 491. This is an unreasonable exclusion of evidence, and an unwarranted interpretation of statutory intent.

To cancel a disability retirement, there must, of course, be competent evidence that a beneficiary is now capable. It

---

[4]The regulations permit the retirement board to declare a claimant permanently disabled when "there is no possibility that rehabilitation could restore the member to fitness for duty." WAC 415-105-090.

would not suffice for the Board or Director to merely review the prior record and revise the earlier conclusion. The statute requires the Director to adopt rules for presenting to disability boards "medical, employability, and other evidence", thus indicating that determination of such capability involves other factors in addition to the required physical examination. RCW 41.26.115(1)(a). Authority to make a determination of capability, however, is given to the Director and the Board. RCW 41.26.140.

Surely, this capability can be measured in part by present actions, including the ability to hold another job with similar duties. Malland, for instance, was employed full time at the time of the hearing as a safety engineer for an insurance company, subject to background noise as part of his job. Moreover, he was a member of the Coast Guard Reserve having passed its annual physical examination. He was nonetheless drawing his disability benefits. As to Kuaimoku, the State Board and the trial judge found an improvement in his back condition. Two doctors testified that a deteriorating back condition such as his would result in objective signs, and they found none.

In addition, both Malland's and Kuaimoku's original disabilities were based in part on subjective evidence of pain or discomfort. Malland was diagnosed as having tinnitus (a ringing in his ears), which results in nervousness and sleeplessness, but is not susceptible to an objective test. There was no evidence that the physical condition had ceased, but the extent of its disabling effect could certainly be reassessed in light of his employment. Kuaimoku complained of persistent back pain, for which there was little objective evidence at the time of his original grant of disability retirement. In the 1976 order on Kuaimoku, the Director noted that "the medical authorities are not in agreement as to the precise nature of the disability."

Pain and discomfort are subjective conditions, which may or may not have objective medical manifestations. *See Miranda v. Secretary of HEW,* 514 F.2d 996, 1000 (1st Cir. 1975). In *Miranda,* involving cancellation of a social secu-

rity disability benefit, the court recognized that some conditions may not be as serious as originally believed, and that many "impairments are difficult to diagnose; a proper diagnosis may require reference to the cumulative medical history." *Miranda,* at 998 n.*. The *Miranda* court also recognized that cancellation of a disability benefit is justified when medical evidence is ambiguous: "the Secretary is entitled, on the basis of his overall evaluation of the claim including Miranda's credibility, to rule one way or the other." *Miranda,* at 1000.

### 3. *Deference to Administrative Decisions*

As noted above, the statute vests the power to determine nondisability in the Board. RCW 41.26.140. Further, RCW 41.26.140(2) requires us to follow the "clearly erroneous" standard for review set by the administrative procedure act, RCW 34.04. The APA does not permit us to substitute "our judgment for that of the administrative agency in factual matters . . ." *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983). To reverse an administrative judgment, we must find a fact determination "clearly erroneous in view of the entire record as submitted and the public policy contained in the act . . ." RCW 34.04.130(6)(e).

The policy of the statute is to provide economic security to disabled fire fighters and law enforcement officers. But the policy also protects the fiscal integrity of the system by restoring workers to employment when they are no longer disabled. To this end, the statute permits periodic reexaminations and evaluation of new evidence by the Board.

Evidence was produced at both Malland's and Kuaimoku's hearings to support a finding that each was able to perform his duties. A review of the record does not leave me with the "definite and firm conviction that a mistake has been committed." *Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969). *See also Franklin Cy. Sheriff's Office v. Sellers, supra.*

### 4. *Level of Performance*

Because of its conclusion, the majority did not reach the issue of the necessary level of performance which constitutes "average efficiency." The majority does, however, at page 491, refer to "*all* necessary job duties," (italics mine) without elaborating. Appellant Malland asserts that a return to duty requires an ability to perform *all* ordinary duties. (This is significant in his case because of medical testimony that he should not be exposed to gunfire.) In response, the Department argues that a return to duty requires the ability to perform a reasonable range of duties—in essence an argument for assignment to light duty, at the same rank or grade.

The language of the statute, WAC, and a prior Washington case support the Department's position. The statute provides for return to work at the same civil service rank, but protects the claimant from assignment at a reduced rank. RCW 41.26.140. The statute distinguishes between "position" and "rank," defining "position" to mean "the employment held at any particular time, which may or may not be the same as civil service rank." RCW 41.26.030(21). Thus the intent of the statute must be taken to require a return to work in the department at the same rank, but not necessarily to the same position.

The WAC refers to ability to perform at "average efficiency." WAC 415-105-060. In addition it provides

> That no member shall be entitled to a disability retirement allowance if the appropriate authority advises that there is an available position for which the member is qualified and *to which one of such grade or rank is normally assigned* and the board determines that the member is capable of discharging, with average efficiency, the duties of the position.

(Italics mine.) WAC 415-105-060(2). An agency's regulations are entitled to great weight in construing the statute which confers its authority. *Holland v. Boeing Co.,* 90 Wn.2d 384, 389, 583 P.2d 621 (1978); *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 448, 536 P.2d 157

(1975).

In an earlier case, we held that a policeman's disability benefit could be canceled on a finding that the claimant could resume some of the positions available in the police department at his former grade. *Clark v. Board of Police Pension Fund Comm'rs,* 189 Wash. 555, 66 P.2d 307 (1937). *Clark* was decided under an earlier pension statute, but there the court was also interpreting conditions or circumstances under which disability ceased.

Decisions from other jurisdictions on this issue are mixed.[5] While they may be useful in clarifying the different interests at stake, it should be emphasized that they are interpreting statutory language which differs from Washington's. The *Clark* court did cite a New York case with apparent approval.

> [T]he court [in *People ex rel. Metcalf v. McAdoo,* 184 N.Y. 268 (1906)] . . . did not require the retirement of a policeman unable to perform full police duty or every conceivable duty, but only such as were unable to discharge with average efficiency the duties of their respective grades.

*Clark,* at 561. The court noted Clark's being "reasonably able to perform the ordinary duties of a police officer." *Clark,* at 562.

In conclusion, the standard articulated by the Department is a correct one. A determination that a claimant is now able to perform a reasonable range of duties with average efficiency justifies a return to work. The burden is on the Department to prove this ability. Proof will involve new evidence, but not necessarily changed circumstances.

---

[5]In interpreting its state statute as precluding a return to light duty, one court expressed concern that requiring a return "would permit the city to reduce an employee in rank, level and dignity and change his class of employment . . ." *Spencer v. Yerace,* 155 W. Va. 54, 61, 180 S.E.2d 868 (1971). Another court expressed concern that the effect of reinstatement at a lesser position would be to waive claimant's future right to a fireman's pension. *Pueblo Firemen's Pension Bd. v. Hubersberger,* 132 Colo. 344, 288 P.2d 352 (1955). In these regards, Washington's statute protects the beneficiary by requiring a return to the same rank at the same salary, and reinstatement in the same pension system.

This evidence could include: (1) medical testimony reflecting an absolute improvement in medical condition, or reflecting clarification of the original diagnosis or reflecting adaptation to the disability; or (2) medical testimony indicating present ability to perform without reference to past disability; or (3) actions of the claimant reflecting adaptation; or (4) changes in the Department (either in equipment or job arrangement) which would allow the claimant to perform the duties of his rank or grade. For the above reasons, I would uphold the Department and, therefore, I dissent.

UTTER and DORE, JJ., concur with DIMMICK, J.